EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *v.* HOWLE.

Opinion delivered October 28, 1918.

1. EVIDENCE—OPINIONS OF NONEXPERTS AS TO SANITY.—The opinions of nonexpert witnesses who were intimately acquainted with deceased as to his sanity were admissible.

2. SAME—OPINION AS TO SANITY—FORM OF QUESTION.—Where a nonexpert witness was asked whether deceased was sane or insane, basing the witness' opinion on intimate acquaintance, the question was not objectionable as calling for an absolute statement, instead of being based on opinion.

3. INSANE PERSONS—EVIDENCE OF INCOMPETENCY.—Evidence of deceased's insanity *held* sufficient to go to the jury.

4. INSURANCE—WHEN PAYABLE—INSTRUCTION.—Where, in an action on a mutual benefit insurance policy which provided that it should be void if insured was killed while in violation of law, it appeared that deceased was killed while making assault upon an officer, and the principal issue was as to insured's sanity at that time, an instruction that if insured became insane before or at the time he was killed the plaintiff should recover is not objectionable as telling the jury to find for plaintiff if deceased was insane before the killing, even though he was sane when killed.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

STATEMENT OF FACTS.

John W. Howle was shot and killed while a member in good standing of a fraternal benefit insurance company. His widow was named as beneficiary in the certificate and sued the company to recover upon the beneficiary certificate issued by it to her husband. The company denied liability on the ground that Howle's death occurred while he was in violation of a provision of the policy, which reads as follows:

"If a guest holding a covenant shall be convicted of felony, or expelled from the order, or become intemperate in the use of liquor, or use opiates, cocaine, chloral or other narcotics or poison, to such an extent as to impair his health, or shall die, or become totally and permanently disabled, or suffer loss of limb or eye, or sustain broken limb in consequence of any such misdemeanor, or any violation of law, or use of liquor or drugs, or in consequence of a duel, or a combat, except in self-defense, or by the hands of a beneficiary (except by accident) or by the hands of justice, or by disease resulting from vicious, intemperate or immoral acts on the part of such guest, or if representations in the application upon the faith of which the covenant was issued shall be found untrue, or if there shall be any failure to comply with the constitution, laws, rules and regulations of the fraternity, the covenant shall be void and of no effect, and all payments or benefits which may have accrued thereunder shall be forfeited without notice or service."

The company admitted the issuance of the certificate to Howle and that he was a member in good standing at the time of his death. It introduced proof tending to show that Howle was killed while engaged in a voluntary combat with Marvin Sowell, marshal of the city of Searcy. It also introduced proof tending to show that Howle became intemperate in the use of liquor within the meaning of the provision of the policy above quoted.

On the part of the plaintiff it was shown that Howle had had trouble with Sowell on account of the enforcement of a cow ordinance in the city of Searcy and that he had become insane on the subject of his troubles with the town marshal.

The jury returned a verdict for the plaintiff and from the judgment rendered the defendant has appealed.

*Hamilton Moses* and *Brundidge & Neelly,* for appellant.

1.   The admission of nonexpert testimony as to insanity of deceased was erroneous.   103 Ark. 200.

2. The court erred in giving the instructions requested by appellee. Some of them are not the law, some abstract and some misleading.

3. There is no testimony showing Howle was insane. He lost his life by reason of a duel or mutual combat, and this vitiated the policy unless it was in self-defense.

*J. N. Rachels,* for appellee.

The law of this case is settled. 118 Ark. 226; 124 *Id.* 224. Insanity was proved, and there is nothing that calls for reversal.

HART, J., (after stating the facts). It is first earnestly insisted by counsel for the defendant that the court erred in admitting the testimony of nonexpert witnesses on the question of the insanity of Howle. This is the fifth appeal in this case. The opinion on a former appeal reported in 124 Ark. 224, under the style of *Eminent Household of Columbian Woodmen* v. *Howle,* deals particularly with this phase of the case. The witnesses who testified as to the insanity of Howle had known him intimately for a great many years and had come in contact with him frequently since he had had trouble with the town marshal of Searcy on account of the enforcement of a cow ordinance. They all testified that he became highly excited when he talked about his troubles with Sowell, and that he seemed to be insane on this subject. Some of them testified that he appeared to be insane on this subject when he was drinking, while others testified that he seemed to be insane on the subject when not drinking. All of the witnesses told of their long and intimate acquaintance with Howle and their opportunities to know the condition of his mind by frequently meeting with him and talking with him on the subject of his troubles. A comparison of the present record with the records on the former appeals shows that the testimony on this point is substantially the same. The testimony was held to be competent upon the former appeals, and that ruling has become the law of the case. It may not be amiss, how-

ever, to state here that in making the ruling we adhered to the well settled principles of law in our previous decisions bearing upon the admissibility of the testimony of nonexpert witnesses on the question of insanity. The nonexpert witnesses were asked the following questions:

"Now, basing your opinion upon your intimate acquaintance with him for a long period of time, your conversations with him on general matters, and your conversations with him especially upon the trouble between him and the town marshal, Mr. Sowell, tell the jury whether or not he was sane or insane."

Objection is made to the form of this question, that the witnesses were not asked to express their opinion as to whether Howle was sane or insane but were asked to state unequivocally whether he was sane or insane. We do not think the question is open to that objection. On the question of insanity of a particular person, a witness can but express his opinion, no matter in what form he puts his answer, or in what language he clothes it.

Again, it is objected that there is not sufficient testimony to go to the jury on the question of the insanity of Howle. We do not agree with counsel in their contention in this respect. Several witnesses who had known Howle long and intimately testified as to their opportunities for observing the condition of his mind with regard to his troubles with the town marshal. They describe his excited condition when the subject was mentioned or discussed in his presence, and, after giving in detail their opportunities for observing his mental condition in this respect, testified that they thought him to be insane on the subject. In addition to this, a physician of many years' experience testified that he had had opportunities for several years for observing Howle's mind and stated that he thought he was insane on the subject of his troubles with Sowell.

It is next insisted that the court erred in giving instruction No. 1. The instruction is as follows:

"You are instructed that if you find that John W. Howle, while a member in good standing in the defend-

ant insurance company, was, at the time of his death, carrying a policy of life insurance in the said company for one thousand dollars, by the terms of which the plaintiff, Mrs. Laura O. Howle, was made beneficiary, and that the dues and premiums had been paid thereon at the proper time, then you will find for the plaintiff in the sum of one thousand dollars with six per cent. interest since February 1, 1912, unless you further find that the said John W. Howle met his death while in violation of the law, or that the policy had been forfeited by his conduct.''

It is claimed that the vice of the instruction consists in leaving it to the jury to say whether or not the conduct of Howle in making an assault upon Sowell was such as to forfeit his policy, when the jury should have been told as a matter of law that his conduct was a violation of the terms of the policy. We do not think this contention is sound. The instructions in the case are to be considered as a whole and read in the light of each other. The effect of our opinions on the former appeals in this case is that if the insured was insane and not responsible for his acts when the killing was done, then he did not commit an unlawful act in violation of law or voluntarily engage in a combat. The principal issue between the parties to this lawsuit was as to whether or not Howle was insane when he was killed by Sowell and this issue was submitted to the jury in several instructions given at the request of the defendant.

It is also insisted that the court erred in giving instruction No. 3. It reads as follows:

''You are instructed that an insane person can not act in a way, while insane, to deprive himself of his legal rights, acquired before the insane period, and you are further instructed that if you find that John W. Howle was a member or guest of the defendant fraternity in good standing for a long time before he was killed, and that he became insane before, or was insane at the time he was killed, then the plaintiff should recover in this action.''

It is insisted that this instruction allowed the jury to find for the plaintiff, regardless of the fact of whether or not he was insane at the time he was killed and plainly tells the jury that if he was insane before he was killed they should find for the plaintiff. We do not think the instruction is susceptible of this criticism. The theory of the plaintiff was that Howle had had some trouble with Sowell, the town marshal of Searcy, about a cow ordinance, and that he brooded over his difficulties to such an extent that he became insane on the subject; that his insanity on the subject became apparent to any one who knew him well, when the subject was mentioned in his presence. It was not the contention of the plaintiff that Howle became temporarily insane on the occasion he was killed, but on the other hand it was contended that he had become permanently insane on the subject of his troubles with Sowell, and all the testimony introduced by the plaintiff was to this effect. The testimony showed that Howle, if insane at all, was permanently insane on the subject of his troubles with Sowell. Hence no prejudice could have resulted to the defendant from giving this instruction.

Other assignments of error in giving instructions are pressed upon us for a reversal of the judgment, but we do not deem it necessary to set out these instructions and discuss them in detail. This is the fifth appeal of this case, and the instructions given were either those given on former trials of the case or they are in conformity with the principles of law decided on the former appeals.

Therefore the judgment will be affirmed.